[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-13733
Non-Argument Calendar
_____

D.C. Docket No. 3:15-cr-00151-HES-JRK-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

LAKEYA SHEONNA CREECH,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 11, 2018)

Before TJOFLAT, JORDAN and NEWSOM, Circuit Judges.

PER CURIAM:

Lakeya Creech appeals the district court's order that she pay $1,261,751.35 in restitution following her guilty plea to conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 2, 1342, and 1349. She argues that the district court erred in determining the restitution amount and in failing to sufficiently explain its findings. After review of the record and the parties' briefs, we affirm the district court's restitution order.

# I

Ms. Creech was involved in a fraudulent scheme to collect payments from the United States Department of Agriculture in exchange for fictitious food sales. In July of 2013, Ms. Creech submitted an application to the United States Department of Agriculture to authorize her fictitious seafood business, Sheonna's Seafood, to receive Supplemental Nutrition Assistance Program (SNAP) benefits as payment for any products sold. In November of 2013, Ms. Creech became qualified to receive SNAP benefits from the USDA. From 2013 to 2015, members of the conspiracy purchased Electronic Benefit Transfer (EBT) cards, typically for fifty cents on the dollar, from their lawful recipients. They then used the cards at point of service terminals in order to register fraudulent transactions at their "seafood business," i.e., Sheonna's Seafood. The USDA then reimbursed those transactions to the bank account Ms. Creech established to receive SNAP benefits. Throughout 2014 and 2015, law enforcement agents investigated Ms. Creech and

her co-conspirators by making undercover sales of EBT benefits to various members of the conspiracy.

In October of 2015, a federal grand jury indicted Ms. Creech for conspiracy to commit wire fraud. As noted, Ms. Creed pled guilty to this conspiracy charge.

At sentencing, the district court imposed a sentence of 15 months' imprisonment. The district court also ordered Ms. Creech to pay $1,261,751.35 in restitution to the USDA jointly and severally with her co-conspirators. The district court found that Ms. Creech had been involved with the conspiracy from its inception in 2013 to its conclusion in 2015. The district court relied, in part, upon the amount of money fraudulently deposited into Ms. Creech's business bank account as stated in the presentence investigation report, as well as Ms. Creech's testimony at the change-of-plea hearing and the sentencing hearing.

## II

We review *de novo* the legality of a restitution order "but review[ ] for clear error the factual findings underpinning [that] order." *United States v. Brown*, 665 F.3d 1239, 1252 (11th Cir. 2011). The Mandatory Victim Restitution Act directs the district court to order restitution if the defendant is convicted of an offense where a victim is "directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. § 3663A(2).

3

"The amount of restitution must be based on the amount of loss actually caused by the defendant's conduct." *United States v. Baldwin*, 774 F.3d 711, 728 (11th Cir. 2014) (internal quotations omitted). The government bears the burden of proving restitution amount by a preponderance of the evidence. *Id*. Because of the inherent difficulties in calculating an exact restitution amount, district courts may rely on a reasonable estimate of the loss predicated on the evidence presented. *Id*. The district court must explain its findings clearly enough to allow for appellate review. *See United States v. Huff*, 609 F.3d 1240, 1248 (11th Cir. 2010).

## III

Ms. Creech does not dispute that the USDA suffered a loss in this case. Indeed, from 2013 to 2015, Ms. Creech received over 1.2 million dollars in payments from the USDA into her business bank account. But she argues that the government did not meet its burden of proving the restitution amount by a preponderance of the evidence because nothing "conclusively established the actual loss amount" and the government was unable to "give a 'precise number' regarding the total amount of monies and/or transactions that were fraudulent" as opposed to legitimate sales. *See* Br. of Appellant at 10–11.

As we explained in *United States v. Martin*, 803 F.3d 581, 594 (11th Cir. 2015), two principles govern our assessment of whether a district court correctly calculated a restitution amount. The first is that restitution is not intended "to

4

provide a windfall for crime victims but rather to ensure that victims, to the greatest extent possible, are made whole for their losses." *Id*. (internal quotation omitted). The second is that "the determination of the restitution amount is by nature an inexact science." *Id*. (internal quotation omitted).

The government based its proposed restitution amount on the total payments that the USDA made to Ms. Creech's business account. At the sentencing hearing, Ms. Creech admitted that over a million dollars were run through the business. Similarly, an agent involved in the investigation testified that "roughly 1.2 million" dollars went into Ms. Creech's business account, according to USDA payment records. The agent also testified that Sheonna's Seafood only sold actual seafood once in over two years and only in a very small quantity. Ms. Creech testified that she bought crab legs to sell from Sheonna's Seafood. When asked how many crab legs she bought, she stated: "Maybe about three bags at the most." D.E. 316 at 35. Based on this evidence, the government calculated its losses at the full amount of SNAP payments that went into Ms. Creech's account, i.e., $1,261,751.35.

In making its factual findings concerning the amount of restitution owed, the district court relied primarily upon two sources of evidence: the testimony of the agent at the sentencing hearing as well as the testimony of Ms. Creech at both the change-of-plea hearing and the sentencing hearing. The district court remarked that "the agent's testimony here reminded me of the fact that . . . this was just a typical

rip-off with respect to the SNAP cards." The district court further explained that "the testimony of Ms. Creech . . . confirms my thoughts." From those evidentiary sources, the district court accepted the total SNAP payments to Ms. Creech's business account as a reasonable estimate of the loss amount the USDA suffered. On this record, we conclude that the district court did not commit clear error in its factual findings and properly applied the preponderance of the evidence standard. *See United States v. Futrell*, 209 F.3d 1286, 1292 (11th Cir. 2000) (holding that the district court properly applied the preponderance of the evidence standard in accepting the government's reasonably estimated restitution amount based upon the available evidence). *See also Baldwin*, 774 F.3d at 728 (holding that the government properly based its calculation "on reasonable estimates taken from facts in the record.").

## IV

Ms. Creech argues for the first time on appeal that the district court did not sufficiently explain its findings and relied on unsubstantiated claims by the government as to the total loss amount. So, we review this claim only for plain error. *See United States v. Aguillard*, 217 F.3d 1319, 1320 (11th Cir. 2000).

A district court "must explain its findings with sufficient clarity to enable this court to adequately perform its function on appellate review." *Huff*, 609 F.3d at 1248. *See also United States v. Gupta*, 572 F.3d 878, 889 (11th Cir. 2009)

(explaining that where the district court identifies no basis for the loss amount it finds, appellate review of the amount is impossible). Here, the district court adequately explained its findings and their basis. As to the restitution amount, the district court heard testimony from one of the agents on that issue. The agent testified that he had access to all the USDA transactional records as well as the bank records for Sheonna's Seafood. When asked, based on those records, how much money in the form of SNAP benefits went into the Sheonna's Seafood account, he stated: "It was roughly 1.2 million . . . that's working off the data that we received from all the EBT transactions that are conducted to the USDA's database. And then we also reviewed the third-party processor data, which kind of quadrates the USDA data." D.E. 316 at 43. The agent testified about whether Ms. Creech's business ever made any legitimate purchases. When asked if there was a record of any legitimate sales, he stated: "I believe there was *one* occasion where some cooked seafood was sold, but it was a very small quantity, personal consumable small amount." *Id*. at 42 (emphasis added).

Based on that testimony, the district court found that Ms. Creech was responsible for the full amount of SNAP benefits she received: "[A]s I recall the testimony in the case [ ] and the agent's testimony here . . . this was just a typical rip-off with respect to the SNAP cards." D.E. 316 at 52. "And I find from the testimony of Ms. Creech, when she said maybe she bought three boxes of crab legs

at a time . . . that that confirms my thoughts." *Id*. at 52–53. This explanation, while not incredibly detailed, is sufficient to enable us to perform our review.

**VI**

Ms. Creech has not established that the district court committed clear error in its factual findings supporting the restitution order or plain error in its explanation of those findings. Accordingly, we affirm the district court's restitution order.

**AFFIRMED.**